IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>GEORGIAN GOREA AKA<br>GEORGIAN MITREA<br>ELIZAN ALEXANDER GAMEZ-GARCIA<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NUMBER: 26-mJ-8246-GCS |

**CRIMINAL COMPLAINT**

I, Tanner Hale, the undersigned complainant being duly sworn, state the following is true and correct to the best of my knowledge and belief:

**COUNT 1**
**POSSESSION OF FIFTEEN OR MORE UNAUTHORIZED AND COUNTERFEIT ACCESS DEVICES – 18 U.S.C. § 1029(a)(3)**

On or about October 28, 2026, in St. Clair County, Illinois, within the Southern District of Illinois, and elsewhere, defendants,

**GEORGIAN GOREA and**
**ELIZAN ALEXANDER GAMEZ-GARCIA**

knowingly and with intent to defraud, possessed 15 or more gift cards that were counterfeit as defined in 18 U.S.C. § 1029(e)(2) and unauthorized as defined in 18 U.S.C. § 1029(e)(3), and defendants' possession of these unauthorized and counterfeit gift cards affected interstate commerce; in violation of Title 18, United States Code, Sections 1029(a)(3) and (c)(1)(a)(i).

**COUNT 2**
**ILLEGAL REENTRY OF REMOVED ALIEN – 8 U.S.C. § 1326(a)**

On or about October 28, 2026, in St. Clair County, Illinois, within the Southern District of Illinois, defendant

**GEORGIAN GOREA,**

an alien, was found in the United States after having been removed therefrom on or about May 8, 2023, at or near Chicago Illinois, and not having obtained the express consent of the Secretary of Homeland Security to reapply for admission to the United States; in violation of Title 8, United States Code, Section 1326(a).

**AFFIDAVIT**

I further state as follows:

1. Affiant makes this Affidavit in support of an Application for a Criminal Complaint and Arrest Warrants for Georgian GOREA ("GOREA") and Elizan Alexander GAMEZ-GARCIA ("GAMEZ-GARCIA"). Affiant believes probable cause exists that GOREA and GAMEZ-GARCIA knowingly and with intent to defraud possessed fifteen or more devices which are counterfeit or unauthorized access devices in violation of 18 U.S.C. § 1029(a)(3) in the Southern District of Illinois and elsewhere. Affiant further believes probable cause exists to believe that GOREA violated 8 U.S.C. § 1326(a), Reentry of Removed Aliens, in the Southern District of Illinois and elsewhere.

2. Affiant is a Special Agent with U.S. Immigration and Customs Enforcement, Homeland Security Investigations ("HSI"). HSI is the principal investigative component of the U.S. Department of Homeland Security ("DHS"). Affiant has held this position since December

28, 2025. Before becoming a Special Agent, Affiant served as an Enforcement and Removal Operations Deportation Officer for approximately one month; as a Police Officer with the National Geospatial-Intelligence Agency for more than two years; and as a Police Officer with the City of Clayton Police Department for approximately four years. Affiant holds a bachelor's degree in criminal justice from Missouri Western State University. Affiant is a graduate of the Criminal Investigator Training Program and the Uniformed Police Training Program. In addition to Affiant's graduation from the Missouri Peace Officer Standards and Training Program and other law-enforcement training courses, Affiant has received more than 1,100 hours of instruction from the Federal Law Enforcement Training Centers in Glynco, Georgia. Affiant has received training in the laws governing search and seizure and has received subsequent training and experience in the preparation, application for, and execution of arrest warrants and search warrants in the performance of Affiant's duties. Affiant has conducted state and municipal criminal investigations and has assisted with multiple federal criminal investigations. Affiant has experience identifying and investigating individuals engaged in violations of state and federal law, including controlled substance offenses, fraud, and identity-theft offenses. As part of Affiant's duties as a Special Agent with HSI, Affiant investigates offenses arising under Title 8 and Title 18 of the United States Code, including violations of 8 U.S.C. § 1326 and 18 U.S.C. § 1029.

## STATEMENT OF PROBABLE CAUSE

3. The facts set forth in this Affidavit are based on Affiant's personal observations; Affiant's training and investigative experience; information received from other law-enforcement officers associated with this investigation; information obtained through witness interviews;

information obtained from official records and files pertaining to this investigation; and information received from third parties.

4. This Affidavit is intended to establish that probable cause exists for the requested Criminal Complaint and Arrest Warrants. It does not purport to set forth all of Affiant's knowledge of, or investigation into, this matter. Rather, Affiant has included the facts Affiant believes are necessary to establish probable cause that on or about October 27, 2026, through on or about October 28, 2026, GOREA and GAMEZ-GARCIA, knowingly and with intent to defraud, possessed 15 or more gift cards that were counterfeit and unauthorized, in violation of 18 U.S.C. § 1029(a)(3) in the Southern District of Illinois and elsewhere.

5. Based on Affiant's training and experience, individuals engaged in access device fraud may use card readers, card-encoding devices, laptop computers, memory cards, gift cards, fraudulent identification documents, and tools to alter or manipulate card-reading equipment. Such individuals may use compromised payment-card information to create, alter, program, possess, or use unauthorized access devices, including prepaid gift cards, to obtain money, goods, or other things of value.

6. On October 28, 2026, Caseyville Police Department officers were dispatched to the First Western Motel, located at 8787 Sasak Place in Caseyville, Illinois, regarding two individuals suspected of conducting fraudulent activity at an ATM located inside the business. The reporting party stated that both GOREA and GAMEZ-GARCIA, who were not guests at the motel, entered the First Western Motel on October 27, 2026, and October 28, 2026, and used or were near the ATM and were manipulating or "messing with" the ATM. The reporting party stated that GAMEZ-GARCIA attempted to conceal his face while near the ATM. The reporting party also stated that

both men were together and had arrived in a white SUV. The reporting party further stated that one of the individuals had parked behind the building, where there were no cameras.

7. Within 10 minutes of receiving the report, on October 28, 2026, Caseyville Police Detective Sergeant Michael Reel responded to the area and observed a white SUV parked behind the First Western Motel. Det. Sgt. Reel observed GOREA seated in the driver's seat. GOREA subsequently drove from the area and committed traffic violations of the Illinois Vehicle Code, including failing to use a turn signal. Det. Sgt. Reel initiated a traffic stop of the white SUV. GOREA provided Romanian identification and consented to a search of his vehicle.

8. During the consent search, officers observed a laptop computer and a card reader between the rear passenger seats. Officers recovered a laptop computer with a USB card-reader attachment, a separate card reader, a Lockly smart lock box, a secure digital (SD) card reader containing an SD card, two microSD cards, multiple hand tools, and a container of adhesive. Officers also recovered approximately 30 Visa and Mastercard gift cards, including cards located in the vehicle's glove compartment and GOREA's wallet. The gift cards displayed circular stickers on the front containing four-digit or six-digit numbers that officers believed could correspond to personal identification numbers or other card-related codes.

9. Subsequent examination of the recovered cards determined that approximately 30 cards contained internal card-number information that had been altered to numbers different from the card numbers printed on the face of the cards. Based on Affiant's training and experience, this alteration is consistent with the fraudulent encoding or re-encoding of access-device information onto cards for unauthorized use. Officers recovered these altered cards along with card-reading

equipment, a laptop computer, digital-storage media, tools, and fraudulent identification documents.

10. Officers also recovered from GOREA's wallet a fraudulent identification card from the Province of Quebec, Canada, a debit card bearing the fraudulent name, and other financial cards. GOREA admitted that the Quebec identification card was fraudulent.

11. At the same time as the traffic stop and shortly after arriving on scene, Caseyville Police officers encountered GAMEZ-GARCIA near the First Western Motel and a nearby convenience store. Caseyville Police Detective Joseph Howell recognized GAMEZ-GARCIA from earlier fraud investigations in Caseyville, Illinois, and as the passenger who fled from Maryland Heights, Missouri Police officers during a traffic stop leading to a fraud investigation on October 31, 2025.

12. When Det. Howell contacted GAMEZ-GARCIA, GAMEZ-GARCIA was no longer wearing a black baseball cap that he had been wearing shortly before the encounter. GAMEZ-GARCIA directed officers to a nearby trash can, where officers recovered the cap. GAMEZ-GARCIA was visibly shaking during the encounter. Officers searched GAMEZ-GARCIA's person and found an Illinois driver's license bearing the name "Yurisin Blanco" and financial cards bearing that same name. A records check showed that the Illinois driver's license was fraudulent.

13. GOREA and GAMEZ-GARCIA were transported separately to the Caseyville Police Department.

14. After being advised of his Miranda rights, GOREA was interviewed and stated that he and GAMEZ-GARCIA had arrived in the Caseyville area two days before their arrest. GOREA

admitted he was driving for GAMEZ-GARCIA. GOREA admitted that GAMEZ-GARCIA gave GOREA the cards with numbered stickers located in his wallet and intended to use the cards to get money from the ATM and share the proceeds with GOREA. GOREA admitted that he knew GAMEZ-GARCIA's activity was illegal.

15. After being advised of his Miranda rights in Spanish, GAMEZ-GARCIA was interviewed. GAMEZ-GARCIA was shown photographs from prior fraud investigations, including Caseyville Police Department and Maryland Heights Police Department reports from 2025. GAMEZ-GARCIA acknowledged that the photographs depicted him. GAMEZ-GARCIA also stated that he knew what he had been doing during the earlier investigation and that he and GOREA were doing something similar on October 28, 2026.

16. GAMEZ-GARCIA admitted that the card reader and laptop computer recovered from the white SUV belonged to him. GAMEZ-GARCIA stated that he purchased the card reader online. GAMEZ-GARCIA further stated that the device allowed him to program cards with altered numbers.

17. 18 U.S.C. § 1029(e) defines an "access device" to mean, "any card, plate, code, account number, electronic serial number, mobile identification number, personal identification number, or other telecommunication service, equipment, or instrument identifier, or other means of account access that can be used, alone or in conjunction with another access device, to obtain money, goods, services, or any other thing of value, or that can be used to initiate a transfer or funds (other than a transfer originated solely by paper instrument." This includes gift cards. See *United States v. Fadiga*, 858 F.3d 1061, 1062 (7th Cir. 2017) (upholding conviction under 18

U.S.C. § 1029(a)(3) for possession of more than 15 unauthorized gift cards that had been fraudulently encoded).

18. 18 U.S.C. § 1029(e)(2) defines a "counterfeit access device" as "any access device that is counterfeit, fictitious, altered, or forged, or an identifiable component of an access device or a counterfeit access device." The recovered gift cards have altered numbers.

19. 18 U.S.C. § 1029(e)(3) defines a "unauthorized access device" to mean "any access device that is lost, stolen, expired, revoked, canceled, or obtained with intent to defraud." The recovered gift cards appear to have been stolen or have been altered with stolen account numbers and obtained with intent to defraud.

20. Based on Affiant's training and publicly available information, Visa and Mastercard gift cards affect interstate commerce in that they operate in all 50 dates and operate online.

21. The facts described above, including GOREA's and GAMEZ-GARCIA's admissions, their coordinated travel, GOREA's role as driver, their shared objective obtaining money from the cards, GOREA's agreed percentage of proceeds, GAMEZ-GARCIA's ownership and admitted purpose for the card reader and computer, the recovery of approximately 30 cards containing altered internal card-number information, and the recovery of fraudulent identification documents establish probable cause to believe that GOREA and GAMEZ-GARCIA knowingly conspired to commit access device fraud.

22. Affiant's investigation further established probable cause to believe that GOREA, a citizen and national of Romania, was found in the United States, in the Southern District of

Illinois, after having previously been removed from the United States and without having obtained permission to reenter, in violation of 8 U.S.C. § 1326(a).

23. DHS Immigration-system checks conducted by HSI personnel revealed that GOREA is a citizen and national of Romania and not a citizen of the United States. The name and date of birth in DHS immigration databases were an exact match to those provided by GOREA. The Caseyville, Illinois, Police Department provided a booking photo of GOREA to Affiant. Affiant compared it to photos of GOREA in DHS databases. These photographs confirmed the match.

24. On or about April 21, 2023, GOREA was arrested by ICE Enforcement and Removal Operations in Cincinnati, Ohio. On or about May 8, 2023, GOREA was removed from the United States to Romania by commercial aircraft departing from Chicago, Illinois. The photograph and identifying information on GOREA's deportation paperwork from Chicago matched the photos taken on scene by the Caseyville, Illinois, Police Department in this case.

25. During the October 28, 2026, interview with Caseyville Police, GOREA stated that he had re-entered the United States from Canada approximately 21 days earlier. GOREA stated that he crossed the border from the Montreal, Canada, area, entered New York, and later traveled by train to Chicago, Illinois.

26. On October 30, 2026, ICE Enforcement and Removal Operations officers, accompanied by an HSI Special Agent, encountered GOREA after his release from the St. Clair County Jail in Belleville, Illinois. GOREA was taken into ICE custody, where he remains.

GOREA admitted that he was a Romanian citizen and national and that he was unlawfully present in the United States without documentation authorizing him to enter, remain, or work in the United

States. Immigration records reflect that GOREA has no pending application with U.S. Citizenship and Immigration Services. GOREA has not obtained permission from the Attorney General or the Secretary of Homeland Security to reapply for admission to the United States following his prior removal.

## CONCLUSION

27. Based on the foregoing, Affiant respectfully requests that the Court issue a Criminal Complaint and Arrest Warrants for Georgian GOREA and Elizan Alexander GAMEZ-GARCIA because probable cause exists to believe that GOREA and GAMEZ-GARCIA knowingly and with intent to defraud possessed fifteen or more devices which are counterfeit or unauthorized access devices in violation of 18 U.S.C. § 1029(a)(3) in the Southern District of Illinois and elsewhere, and GOREA violated 8 U.S.C. § 1326(a), Reentry of Removed Aliens.

FURTHER AFFIANT SAYETH NAUGHT.

TANNER G HALE Digitally signed by TANNER G HALE Date: 2026.11.05 10:35:13 -06'00'

Tanner Hale
Special Agent
Homeland Security Investigations

Amanda McColgan
Assistant United States Attorney

Subscribed and sworn to on the 6th day of November 2026, at East St. Louis, Illinois.

HONORABLE GILBERT C. SISON
United States Magistrate Judge
Southern District of Illinois